```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

THE WEINBERG GROUP, INC.,      )
                               )
     Plaintiff,                )
                               )
         v.                    )    01:04cv410(JCC)
                               )
AON CONSULTING, INC., et al    )
                               )
     Defendant.                )
```

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff Weinberg Group Inc.'s post-trial evidence submission regarding category 3[1] damages - namely attorneys' fees resulting from participation in the Internal Revenue Service's Employee Plans Compliance Resolution System. For the reasons stated below, the Court finds Aon need not indemnify Weinberg for Category C damages because the Court is unable to make an intelligent and reasonable estimate of the amount of damages attributable to Defendant's breach of duty of care.

### I. Background

On February 14 and 15, 2005 these parties came before this Court for a nonjury trial pursuant to a Complaint filed by

---

[1] The plaintiff currently refers to the present damages as Category 3 damages although the Complaint and the Order following trial refer to Category C damages. For consistency, this memorandum opinion refers to the damages as Category C damages.

The Weinberg Group, Inc. ("Weinberg") against the Defendant Aon Consulting, Inc ("Aon").  Aon is a corporation that provides actuarial services dealing with the administration of pension and other benefit plans.  On October 20, 2007, Aon, through its predecessor WTR Consulting, proposed to perform its services to maintain The Weinberg Consulting Group, Inc. Pension Trust ("the Plan").  The Plan is a defined benefit plan; one that establishes a defined formula for calculating employee benefits.  The Plan was subject to the "Top 25 Rule" which provides that security must be posted for any lump sum distribution made to the 25 most highly compensated employees.  Lump sum distributions were made to Weinberg employees who classified as Top 25 on ten occasions ("Distributions 1-10"), none of which were posted.  The first three distributions were made before Aon became Weinberg's actuary.  The next two distributions were made after Aon became Weinberg's actuary but were calculated by Weinberg's previous actuaries.  Aon calculated and directed Weinberg to make five distributions, Distributions 6-10.

On October 7, 2002, Weinberg entered into the Employee Plans Compliance Resolution System - Voluntary Correction of Operational Failures of the Internal Revenue Service ("I.R.S.").  After the I.R.S. learned of the distributions, it gave Weinberg three options.  After determining that it would be impossible to

fulfill one option, posting security for the distributions, Weinberg chose the option of terminating the Plan.

On April 8, 2004, Weinberg filed suit against Aon for breach of fiduciary duty, professional negligence, and indemnification for litigation costs in defending third-party suits.  Weinberg proceeded to trial on all claims but the fiduciary duty charge.  Weinberg sought four different categories of damages.

On June 28, 2005, the Court ordered that Aon breached its duty of care with respect to Distributions 6-10.  *See Weinberg Group, Inc. v. AON Consulting, Inc.*, Civil Case No. 04-410, slip op. at 9 (E.D. Va. June 28, 2005).  In the same Order, the Court found that Aon was not liable to and need not indemnify Weinberg for Category A and D damages.  *Id.* at 16, 32. Category A damages were for costs, including application fees and interests, of the loan necessary to fully fund the Plan.  Category D damages were for costs and attorneys' fees associated with defending a suit from a former Weinberg employee who alleged violations of the Employee Retirement Income Security Act.  The reason the Court found that Aon was not liable to and needed not indemnify Weinberg for these damages was because of Weinberg's inability to make an intelligent and reasonable estimate of the amount of damages resulting from Aon's involvement.  *Id.*

Likewise, the Court Ordered that Aon was not liable to and needed not indemnify Weinberg for Category B damages. *Id.* at 27. Category B damages sought compensation for the difference between the amount needed to fully fund the Plan from January 1, 1999 to July 1, 2005. The Court reasoned that Weinberg had not shown that Aon's breach of its duty was the proximate cause of the Category B damages. *Id.*

Finally, the Court found that Aon was liable to and must indemnify Weinberg for Weinberg's attorneys' fees and costs associated with the compliance program with respect to Distributions 6-10. *Id.* at 29. These damages were classified as Category C damages. The Court allowed Weinberg to submit post-trial evidence of these Category C damages, yet warned that the evidence must produce sufficient facts to permit the Court to make an intelligent and reasonable estimate of the amount. *Id.* at 30. Weinberg filed its post-trial evidence submission on July 27, 2005, to which Aon responded on August 11, 2005. Weinberg replied to Aon's opposition on August 18, 2005. This matter is currently before the Court.

## II. Analysis

Weinberg originally sought $91,551.78 in Category C damages. At the post-trial evidence hearing, Weinberg reduced the amount of damages they were seeking to $88,0911.78 because there were a couple of payment entries that were not specifically

attributable to the voluntary compliance program.  Following the testimony of Paul Hamburger at the hearing on this evidentiary submission, the total damages sought by Weinberg were again reduced to $88,801.78.  In response to questioning regarding specific payment entries, Mr. Hamburger conceded that an entry dated September 10, 2003 regarding "discussions with Jay Schiarro regarding cash-out of terminated participant" did not relate to the voluntary compliance program.  (Tr. at 39).

Weinberg's central argument for recovery is that had Aon properly advised Weinberg regarding Distributions 6-10, Weinberg would have availed itself of certain self-correction opportunities offered by the I.R.S. for Distributions 1-5.  The Administrative Policy Regarding Self Correction allows for correction of insignificant operational plan defects without contact with the I.R.S., compliance fees or tax sanctions at any time.  Rev. Proc. 98-22.  If the defects are significant, self correction can occur without fee or sanction within two-years where a plan is the subject of a favorable determination letter from the I.R.S.  Rev. Proc. 98-22. Weinberg claims that because Aon breached its duty by not advising Weinberg of the Top 25 Rule for Distributions 6-10 for a period of two years, Weinberg's opportunity for self correcting Distributions 1-5 was eliminated.  Therefore, Weinberg claims that "<u>but for</u> Aon's breach of its standard of care, Weinberg would not have incurred <u>any</u> fees and

costs associated with the Voluntary Compliance Program." (Pl.'s Reply p. 2.)

Alternatively, Weinberg claims that had Aon given proper advice in a timely manner about the Top 25 Rule in relation to Distributions 6-10, Weinberg would have self corrected all of the distributions and would not have taken the approach that it ending up being forced to take - self reporting to the Voluntary Compliance Program for all ten distributions. Weinberg supports the claim that it would have self corrected by highlighting that when it learned of the Top 25 restrictions it immediately hired counsel who would have suggested self correction as the "obvious course of action." (Pl.'s Submission p. 6)  The timing of Aon's advice forced Weinberg to self report for Distributions 1-10, rather than the financially-preferable option of self correcting.  The attorneys' fees related to the self reporting procedure for all ten distributions totaled $88,801.78 - the amount Weinberg seeks in Category C damages.

This Court ruled that Aon is liable for any attorneys' fees and costs associated with the compliance program with respect to Distributions 6-10.  *Weinberg Group*, 04-410 at 29.  In the Memorandum Opinion supporting the June 28, 2005 Order, the Court mentioned no less than four separate times that Weinberg cannot assert that Aon had a duty to advise Weinberg of violations that occurred before Aon became Weinberg's actuary,

namely Distributions 1-5, and consequently Weinberg cannot recover damages resulting from those distributions.  *Id.* at 13, 15, 28, 29.  The sole reason that the Court allowed for post-trial evidence regarding Category C damages is that because "[Vincent] Amoroso[, Aon's expert witness,] reluctantly admitted that the I.R.S. deals with violations on a continuum,. . . it is possible that Weinberg incurred more fees and costs related to the compliance program as a result of having made Distributions 6-10."  *Id.* at 30.  In other words, Weinberg must produce sufficient facts to permit the Court to make an intelligent and reasonable estimate of the amount of *extra* damages Weinberg incurred in relation to the compliance program because of the additional five distributions that Aon is responsible for directing.

Weinberg's argument that Aon's improper advice regarding Distribution 6 was the proximate cause for Weinberg's entire involvement in the compliance program is simply a backdoor approach to projecting a duty on Aon for actions taken prior to Aon's duty attaching.  Aon's liability regarding Weinberg's complete involvement in the compliance program was decided at trial.  Following two days of testimony, the Court held Aon responsible for any "*more* fees and costs related to the compliance program as a result of having made Distributions 6-10."  *Id.* (emphasis added).  Thus, the Court already concluded

that Aon is not responsible for Weinberg's total involvement in the compliance program. The Court is only holding Aon responsible for *additional* fees and costs that Weinberg incurred as a result of Distributions 6-10. The Court agrees with the statement of Aon's counsel at the post-trial damages hearing that Weinberg is simply trying to "reargue liability under essentially the same of theory [as during trial] with a slightly different twist to say that AON is responsible for, in this one category of damages, all the distributions." (Tr. at 8).

Like Category A and Category D, Category C contains damages caused by Distributions 1-10. As the Court stated very clearly in its discussion of Category 3 damages, "Weinberg cannot allege *any duty* with respect to Distributions 1-5." *Id.* at 29 (emphasis added). The Court continues to uphold the appropriate damages standard that Weinberg repeatedly emphasized in the hearing on this matter; namely that a reasonable certainty test governs in calculating damages and that a "plaintiff is not required to prove the amount of his damages with mathematical precision." *Id.* at 16 (quoting *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 268 (Va. 1995)). However, Weinberg has not provided any evidence of what portions of the $88,801.78 amount were caused by Distributions 6-10; therefore, there is no reasonable certainty in the present case. As such, Weinberg again has not produced any facts to permit the

Court to make an intelligent and reasonable estimate of the amount of damages in Category C which were caused by Aon's breach of its duty of care in regards to Distributions 6-10.  Therefore, the Court must deny these damages.

### III. Conclusion

For the reasons stated above, the Court finds Aon need not indemnify Weinberg for the Category 3 damages because the Court is unable to make an intelligent and reasonable estimate of the amount of damages.  An appropriate Order will issue.


October_17_, 2005                     _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                                      UNITED STATES DISTRICT COURT JUDGE